JUDGE DANIELS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

06 CV 13131

---------------------------------------

WILLIAM K. HARRISON,

                    Plaintiff,                  **COMPLAINT WITH**
                                                **JURY DEMAND**

     -against-

THE UNITED STATES POSTAL SERVICE, and
JOHN E. POTTER, POSTMASTER GENERAL,

                    Defendants.
---------------------------------------X

RECEIVED
NOV 13 2006
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff, WILLIAM K. HARRISON, by and through his

attorneys, the law office of Cronin & Byczek, LLP, as and for

his Complaint against defendants, THE UNITED STATES POSTAL

SERVICE and JOHN E. POTTER, POSTMASTER GENERAL, respectfully

sets forth and alleges the following:

                    **NATURE OF ACTION**

     1.   This action is hereby commenced for the purpose of

seeking to secure protection of, and to redress the deprivation

of, rights and privileges secured by the United States

Constitution, Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985,

New York State Executive Law § 296, and New York City Human

Rights Law § 8-107, et. seq., providing for relief based upon

defendants' unlawful employment practices of engaging in

discrimination based upon plaintiff's race and color, and in

retaliation against plaintiff for engaging in protected activity.

## JURISDICTION

2.   The jurisdiction of this Honorable Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343 (3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

3.   This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

4.   Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5.   The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment Freedom of Speech and by the Fourteenth Amendment Equal Protection and Due Process clauses of the United States Constitution, and provisions against race and color discrimination and retaliation in employment, based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, along with applicable provisions of the New York State Constitution, the New York State Executive Law and the New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6.    On or about January 21, 1998, plaintiff HARRISON filed a formal complaint of discrimination with the United States Postal Service Equal Employment Opportunity (hereinafter "USPS EEO"), under agency complaint number 1A-101-0022-98. Plaintiff's formal complaint of employment discrimination was based upon race, color and retaliation for engaging in protected activity.

7.    On or about May 27, 1998, the USPS EEO issued a final decision summarily dismissing plaintiff HARRISON's formal complaint of discrimination.

8.    On or about June 20, 1998, plaintiff HARRISON filed an appeal to the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under appeal number 01985277.

9.    On or about June 21, 1999, the EEOC Office of Federal Operations, reversed the USPS EEO final decision of dismissal, finding that the agency's decision to dismiss was improper and remanding it for further processing within the USPS EEO.

10.    On or about December 17, 1999, EEOC Administrative Judge William McCauley issued an Order acknowledging plaintiff HARRISON's request for a hearing. The case was assigned EEOC Hearing No. 160-A0-8179X.

11.    On or about January 12, 2000, plaintiff HARRISON filed another formal complaint with the USPS EEO, under agency complaint number 1A-102-0006-00, based upon retaliation for

plaintiff's prior formal complaint. This case was also assigned EEOC Hearing No. 160-A0-8179X.

12.  During the time period of 2000 to 2006, plaintiff HARRISON pursued, within the EEOC, his legal rights and remedies relating to the facts and circumstances presented by the instant action. During said period of time, discovery was conducted, mediation was attempted and failed, and motion practice was undertaken.

13.  On or about August 2, 2006, plaintiff HARRISON informed EEOC Chief Administrative Judge Kenneth W. Chu of his request for termination of Commission processing of his appeal, due to plaintiff's intention to file the instant civil action in United States District Court.

14.  Based upon the foregoing, on August 11, 2006, Judge Chu issued a Dismissal Order pursuant to 29 C.F.R. § 16.14.107 (3), notifying plaintiff HARRISON of his right to file a civil action in Federal District Court.

15.  The within action is being brought in compliance with 29 C.F.R. § 1614.407, subsequent to 180 days from the date of filing of Plaintiff HARRISON's individual complaint, and pursuant to Judge Chu's Order.

## VENUE

16.  Venue is proper within the Southern District of this Court, County of New York, State of New York, as the course of

4

defendants' conduct took place within the boundaries of the County of New York, State of New York, and the instant causes of action are based upon violations of the New York State Constitution, the New York State Executive Law and the New York City Human Rights Law.

### PARTIES

17.  Plaintiff HARRISON is an African American male citizen of the United States, and a resident of Sullivan County, State of New York. He has registered his opposition to the discriminatory practices of defendants, and as such, is a member of a protected class. At all times relevant to the claims set forth herein, plaintiff HARRISON was an employee of THE UNITED STATES POSTAL SERVICE from on or about October 1984 to on or about June 2001.

18.  Defendant THE UNITED STATES POSTAL SERVICE is a federal agency organized and existing under, and by virtue of, the Constitution and federal laws of the United States.

19.  Defendant JOHN E. POTTER is employed by THE UNITED STATES POSTAL SERVICE as POSTMASTER GENERAL, and was acting within the scope of his employment and under color of law. He is sued both in his official capacity and individually. He is responsible for the institution and application of policies and practices concerning discrimination and retaliation in THE UNITED STATES POSTAL SERVICE.

## FACTS UNDERLYING PLAINTIFF'S CLAIMS

20.  Plaintiff WILLIAM HARRISON began his career with THE UNITED STATES POSTAL SERVICE (hereinafter "USPS") when he was hired as a mail handler in October 1984.

21.  Plaintiff HARRISON, throughout his employ with defendant USPS, always maintained stellar performance evaluations that reflected the exceptional performance of his duties and responsibilities.

22.  On or about August 1987, plaintiff HARRISON was promoted to Supervisor of Distribution Operations with the USPS.

23.  On or about May 1988, Plaintiff HARRISON met his future wife, Monique, while both were employed with defendant USPS. Plaintiff WILLIAM HARRISON and Monique were married on May 23, 1989.

24.  From the period of on or about 1986 through 1992, plaintiff HARRISON's wife, Monique Harrison, was forced to endure an intimidating, offensive and hostile work environment in her employment with defendant USPS. Said hostile work environment consisted of an unrelenting pattern and practice of physical and verbal sexual harassment at the hands of her direct supervisor, Freddie Borroughs, which included unwelcome and offensive comments, sexual advances, requests for sexual favors, threats and touching. The cumulative effect of Mr. Burrough's sexual conduct created an abusive, offensive and contaminated

work atmosphere. Ms. Harrison logged numerous formal complaints regarding said unbearable harassment, each time requesting that she be reassigned to a different supervisor. Despite the foregoing, defendant USPS continued to force Ms. Harrison to endure Mr. Burrough's sexual harassment and intimidation. Due to the aforestated pervasive and severe harassment at the hands of her supervisor, Ms. Harrison's physical and mental health began to seriously deteriorate, necessitating her to go on extended sick leave on numerous occasions. On or about 1992, after six years of condoned and tolerated sexual harassment, hostile working environment and retaliation, Ms. Harrison was determined by the United States Social Security Administration to be totally disabled.

25. On or about January 1992, Monique Harrison duly filed a formal complaint of sexual harassment with the US EEOC, relating to the abovementioned conduct of Mr. Burroughs that was condoned and tolerated by defendant USPS. Over the years, Ms. Harrison continued to pursue her complaints of sexual harassment, and on or about August 25, 2003, Ms. Harrison initiated a lawsuit in United States District Court, Southern District of New York, for claims arising out of said condoned and tolerated sexual harassment. Throughout the entire complaint process, plaintiff WILLIAM HARRISON offered his support to his wife, which support was known by defendants. Said support by plaintiff included,

inter alia, plaintiff HARRISON's testimony on his wife's behalf at an EEO hearing. Due to plaintiff HARRISON's involvement in his wife's formal complaint process, he was caused to suffer continuous and repeated retaliation at the hands of defendant USPS as further set forth below.

26.  On or about 1991, Plaintiff HARRISON delivered medical evidence with relation to his wife's health condition to the attendance supervisor. Ms. Harrison's deteriorating health condition was brought about as a direct result of the aforementioned severe and pervasive sexual harassment of Mr. Burroughs. After simply delivering said evidence to the attendance supervisor, plaintiff HARRISON was questioned and cross-examined by defendant USPS regarding his involvement and role in his wife's complaints of sexual harassment.

27.  On or about 1991 to 2001, plaintiff HARRISON applied numerous times for the general supervisor position with the USPS. On one occasion, plaintiff interviewed for the position and was told that he was sure to receive the promotion. Ultimately, plaintiff was never given the promotion due to his race and color, and in retaliation for his relationship to Monique, and his involvement and support for her formal complaints of sexual harassment.

28.  On or about 1992, reorganization of the USPS took effect. Due to Plaintiff HARRISON's race and color, and in

retaliation based upon his relationship and involvement in his wife's complaint against the USPS, plaintiff's detailed assignment was cancelled. Plaintiff was told that no details of supervisors were permitted under the terms of the new structure. Meanwhile, the detail assignments of similarly-situated non-black supervisors were still permitted.

29.  From on or about 1992 through 2001, USPS management officials, including Louise Whitehead, Joseph Colon and Pauline Cousins, were aware of Monique Harrison's EEO complaint and engaged in intimidating and threatening plaintiff HARRISON from on or about 1994 until his retirement in 2001, stating that if he acted in any way on his wife's behalf, he would be subjected to adverse employment actions, including, inter alia, transfer.

30.  On or about 1994, in retaliation for plaintiff's support and involvement in Monique Harrison's formal complaints, defendant USPS reassigned Freddie Burroughs to Automation where plaintiff HARRISON was already assigned, thereby forcing Plaintiff HARRISON to interface on a daily basis with his wife's sexual harasser.

31.  From on or about 1994 until on or about October 1997, USPS created a hostile work environment by requiring plaintiff HARRISON to conduct daily business with Freddie Burroughs, following Mr. Burrough's sexual attacks on plaintiff's wife at

the USPS job site, and despite the pending formal charges filed
by Ms. Harrison against Mr. Burrough's and defendant USPS.

32.   Plaintiff HARRISON's numerous and repeated requests to
USPS management, including plaintiff's immediate supervisor
Pauline Cousins, to have his work responsibilities adjusted in
light of this obvious and apparent hostile work environment fell
on deaf ears. Plaintiff repeatedly communicated to his
supervisors the psychological stress of having to work with Mr.
Burroughs, including suffering severe depression and seriously
affected sleep patterns.

33.   On or about 1994, Joe Colon, a Hispanic male, was
appointed to act as Tour Director. Joe Colon promoted a pattern
and practice of race and color discrimination by favoring white
and Hispanic USPS employees over similarly situated black
employees. Said discrimination was condoned and tolerated by
defendant USPS.

34.   Tour Director Joe Colon appointed only Hispanics and
white USPS employees to higher-level positions, denying such
appointments to similarly situated black employees. Said
promotions were not based upon any legitimate, non-
discriminatory criteria, but rather, were motivated solely upon
race and color.

35.   Under Tour Director Joe Colon, free parking at the
USPS work site was denied to all black supervisors, but was

freely given to all similarly situated white and Hispanic
supervisors, thereby requiring plaintiff HARRISON to take public
transportation to and from work, at his own expense.

36. Plaintiff HARRISON and other black supervisors were
never given the opportunity to cover higher-level positions such
as Manager of Distribution Operations, yet other similarly-
situated supervisors of white or Hispanic background were
repeatedly given the opportunity. Said actions were not based
upon any legitimate, non-discriminatory criteria, but rather,
were motivated solely upon race and color.

37. USPS supervisors of white and Hispanic background who
worked on their rest day were not required to work an entire
day. However, plaintiff HARRISON and other similarly situated
black employees were required to work a full day on their rest
day. Said actions were not based upon any legitimate, non-
discriminatory criteria, but rather, were motivated solely upon
race and color.

38. Furthermore, overtime opportunities were given to
white and Hispanic USPS supervisors, but were denied to
similarly situated black supervisors. Said denial was not based
upon any legitimate, non-discriminatory criteria, but rather,
was motivated solely upon race and color.

39. On or about October 1995, Plaintiff HARRISON

testified on his wife's behalf against Freddie Burroughs at an EEO hearing relating to the sexual harassment of Mr. Burroughs, which was condoned and tolerated by defendant USPS.

40.  On or about October 27, 1997, plaintiff filed an EEO Complaint relating to the aforestated race and color discrimination. Approximately two weeks after filing his first EEO charges, and in retaliation for said filing, plaintiff HARRISON was reassigned on a permanent basis to the garage of the transportation section of Morgan Processing and Delivery Center, as a punishment assignment.

41.  From on or about 1997, plaintiff HARRISON was denied access to meetings called by the Plant Manager, while similarly situated non-Hispanics were invited to said meetings.

42.  In retaliation for voicing his formal opposition to the discriminatory behavior of defendant USPS, and based upon his race and color, plaintiff HARRISON was denied differential payment for the period from June 21, 1997 to July 4, 1997, when plaintiff worked at the higher level in the Acting MDO position during the vacation of the MDO. Meanwhile, similarly situated white and Hispanic supervisors who work at said higher level are given differential payment for their services.

43. On or about October 18, 2000, plaintiff was issued a Letter of Warning for failure to take "discretionary" disciplinary action against a female mail handler. As the female

mail handler's supervisor, plaintiff HARRISON determined through investigation that her actions did not warrant discipline and that she was an otherwise stellar employee. Meanwhile, similarly situated white and Hispanic employees with more egregious issues did not receive warning letters, but rather, were promoted.

44. As per the foregoing actions of defendants, plaintiff HARRISON suffered race and color discrimination and disparate treatment affecting the terms, conditions and privileges of his employment with the USPS.

45. Said employment discrimination, including retaliation for engaging in protected activity, resulted in both economic and career losses to plaintiff HARRISON since his earning potential has been severely limited by defendants' actions.

46. As a result of said discrimination, retaliation and hostile work environment, plaintiff HARRISON has suffered physical and psychological health issues, including, but not limited to, severe emotional distress, depression, hypertension, sleep disorders, and weight gain.

## AS AND FOR A FIRST CLAIM PURSUANT TO 42 U.S.C. § 1981

45. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 44 with the same force and effect as if fully set forth herein.

46.   Throughout the events cited herein, defendants, while acting under the color of law, subjected plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, specifically the Equal Protection and Due Process guarantees of the 14th Amendment of the Constitution, and civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

47. Plaintiff has been deprived of his Constitutional right to be free of discrimination based upon race and color and retaliation, and has been damaged in his employment and suffered emotional distress and conscious pain and suffering as a result of these actions.

48. The actions of defendants in depriving plaintiff of his constitutional and civil rights, as herein before stated, were willful and malicious acts.

50. As a result of the aforesaid wrongful, reckless and intentional acts of defendants, plaintiff has been damaged in the amount of $5,000,000.00 (Five Million Dollars).

51. Based upon the foregoing, plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00 (Five Million Dollars).

## AS AND FOR A SECOND CLAIM PURSUANT TO 42 U.S.C. § 1983 AGAINST JOHN E. POTTER

52. Plaintiff repeats, reiterates and realleges each

14

and every allegation contained in paragraphs 1 through 51 with the same force and effect as if fully set forth herein.

53. Defendant POTTER has embarked on a course of conduct that deprived plaintiff of his rights under the United States Constitution, federal and state laws.

54. The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by plaintiff are examples of defendants' violations of plaintiff's civil rights.

55. The actions of defendant POTTER, acting under color of federal law, custom and usage, has deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of his rights to Equal Protection and Due Process under the 14th Amendment.

56. By these actions, defendant POTTER has deprived plaintiff of his rights under the 14th Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

57. As a consequence of defendant POTTER's unlawful actions, plaintiff demands damages in the amount of $5,000,000.00 (Five Million Dollars).

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS FOR FIRST AMENDMENT RETALIATION

58. Plaintiff repeats, realleges, and reiterates

each and every allegation set forth in paragraphs 1 through 57 with the same force and effect as if fully set forth herein.

59. Plaintiff has been unlawfully subjected to a hostile work environment and harassment in retaliation for exercising his First Amendment rights to free speech.

60. The aforementioned conduct on the part of defendants was without cause or justification and violated plaintiff's civil rights, privileges and immunities as guaranteed by the First Amendment of the United States Constitution, as well as the Constitution of the State of New York and the New York City Administrative Code and Human Rights Law.

61. The actions of defendants in depriving plaintiff of his constitutional and civil rights were willful and malicious acts.

62. As a direct and proximate consequence of defendants' unlawful, discriminatory and harassing conduct, plaintiff has suffered losses of benefits and privileges of his employment, has been damaged professionally and economically, and has suffered physical and emotional pain and suffering.

63. Based upon the foregoing, plaintiff is entitled to compensatory damages in the amount of $5,000,000.00 (Five Million Dollars), and punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars).

**AS AND FOR A FOURTH CLAIM PURSUANT TO 42 USC § 1985**

64. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 63 with the same force and effect as if fully set forth herein.

65. Defendants have conspired with and amongst each other to deprive plaintiff of his rights under the United States Constitution, federal, state and city laws.

66. Defendants have conspired to violate plaintiff's civil rights pursuant to 42 U.S.C. § 1985 when they agreed to implement, direct and/or participate in a program to retaliate, harass and create a hostile work environment against plaintiff solely because of his race and based upon his opposition to discrimination and a hostile work environment.

67. Such policy and practice is an intentional and concerted effort by defendants to disparage plaintiff.

68. By reason of the aforementioned facts and conspiracy, defendants have violated 42 U.S.C. § 1985.

69. The actions and omissions of defendants, in depriving plaintiff of his constitutional and civil rights, by their participation in the discriminatory, harassing and retaliatory conduct, as herein stated, were willful and malicious acts.

70. Because of the foregoing, plaintiff has been

damaged in the amount of $5,000,000.00 (Five Million Dollars), and punitive and exemplary damages in the sum of $5,000,000.00 (Five Million Dollars).

## AS AND FOR A FIFTH CLAIM IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 70 with the same force and effect as if fully set forth herein.

72. Based upon the aforementioned facts, defendants discriminated against plaintiff as a result of his race and in retaliation for exercising his First Amendment rights.

73. Defendants intentionally and willfully discriminated against and harassed plaintiff and permitted plaintiff to be discriminated against and harassed in his employment on account of his race and color and in retaliation for opposition to discrimination, thereby violating § 704 (A) of Title VII of the Civil Rights Act of 1964, as amended, and 42 USC § 2000e-3(a).

74. No action was taken by defendants or its agents to stop the harassment of plaintiff, thereby contributing to a hostile working environment.

75. As a result of defendants' conduct, plaintiff suffered economic loss, pain, humiliation, embarrassment, extreme emotional distress and continues to suffer to this day,

and further, as a result of defendants' conduct, plaintiff has suffered both professionally and personally.

76. As a result of the foregoing, plaintiff has been damaged in the amount of $5,000,000.00 (Five Million Dollars). Additionally, plaintiff seeks punitive and exemplary damages in the sum of $5,000,000.00 (Five Million Dollars).

## AS AND FOR A SIXTH CLAIM PURSUANT TO NEW YORK STATE EXECUTIVE LAW § 296

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 though 76 with the same force and effect as if fully set forth herein.

78. Based upon the foregoing, defendants intentionally and willfully discriminated against plaintiff in his employment on account of race and color and in opposition to discriminatory practices in violation of New York State Executive Law § 296. Plaintiff has continuously been victimized by defendants for his opposition to discrimination, retaliation and a hostile work environment created by defendants.

79. Even though defendants were aware of plaintiff's complaints and the existence of a hostile work environment, no actions were taken by defendants in an effort to correct the discriminatory conduct.

80. Such conduct on the part of defendants, without

cause or justification, violated plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

81. As a result of defendant's actions and all deprivations of plaintiff's rights as guaranteed under New York State Executive Law § 296, plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

82. As a result of the foregoing wrongful, careless and intentional acts of defendants, plaintiff has been damaged in the amount of $5,000,000.00 (Five Million Dollars). Additionally, plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars).

## AS AND FOR A SEVENTH CLAIM PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

83. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 82 with the same force and effect as if fully set forth herein.

84. Defendants discriminatory conduct based upon plaintiff's race and color, as well as in retaliation for his complaints of discriminatory conduct, constitute discrimination in violation of New York City Administrative Code § 8-107 (1), et. seq., and the New York City Human Rights Law.

85. The aforementioned occurrences were caused by

the wrongful, careless, reckless and intentional acts of defendants.

86. Because of the foregoing, plaintiff has been damaged in the amount of $5,000,000.00 (Five Million Dollars). Additionally, plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars).

## JURY TRIAL

87. Plaintiff requests a jury trial on all questions of fact presented herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court grant the following relief:

1.   Declare that the aforementioned actions of defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and the New York City Human Rights Law and Administrative Code, along with all applicable statutes;

2.   Declare that the aforementioned discriminatory actions of defendants were in violation of New York State Executive Law § 296, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VII of the Civil Rights Act of 1964, as amended;

3.   As and for plaintiff's First Claim, grant

plaintiff the sum of $5,000,000.00 (Five Million Dollars), along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

4.   As and for plaintiff's Second Claim, grant plaintiff the sum of $5,000,000.00 (Five Million Dollars) along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

5.   As and for plaintiff's Third Claim, grant plaintiff the sum of $5,000,000.00 (Five Million Dollars) along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

6.   As and for plaintiff's Fourth Claim, grant plaintiff the sum of $5,000,000.00 (Five Million Dollars) along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

7.   As and for plaintiff's Fifth Claim, grant plaintiff the sum of $5,000,000.00 (Five Million Dollars) along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

8.   As and for plaintiff's Sixth Claim, grant plaintiff the sum of $5,000,000.00 (Five Million Dollars) along with punitive and exemplary damages in the amount of $5,000,000.00 (Five Million Dollars);

9.   As and for plaintiff's Seventh Claim, grant

plaintiff the sum of $5,000,000.00 (Five Million

Dollars) along with punitive and exemplary damages in

the amount of $5,000,000.00 (Five Million Dollars);

10.   Grant plaintiff all costs for this action,

including reasonable attorney's fees; and

11.   Grant plaintiff such other and further relief as

this Court may seem just and proper.

Dated:   Lake Success, New York
         November 9, 2006

                              Yours etc,
                              Cronin & Byczek, LLP


                              Christopher F. Bellistri (CB-4387)
                              Attorneys for Plaintiff
                              1981 Marcus Ave, Suite 227
                              Lake Success, New York 11042
                                 (516) 358-1700

*Index No.*          *Year 20*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM K. HARRISON,

                                   Plaintiff,

         – against –

THE UNITED STATES POSTAL SERVICE AND JOHN E. POTTER, POSTMASTER
GENERAL,

                                          Defendants.

## SUMMONS AND COMPLAINT

CRONIN & BYCZEK, LLP
ATTORNEYS AT LAW
1981 MARCUS AVENUE, SUITE 227
LAKE SUCCESS, NEW YORK 11042-1055
(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                            *is hereby admitted.*

*Dated:*

               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                                  *Attorney(s) for*

## PLEASE TAKE NOTICE

☐
**NOTICE OF ENTRY**
   *that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*              *20*

☐
**NOTICE OF SETTLEMENT**
   *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
                        *one of the judges of the within named Court,*
*at*
*on*                  *20*      *, at*          *M.*

*Dated:*

                                CRONIN & BYCZEK, LLP
                                ATTORNEYS AT LAW
                                1981 MARCUS AVENUE, SUITE 227
                                LAKE SUCCESS, NEW YORK 11042-1055

*To:*

N 912 CL