PREET BHARARA
United States Attorney
Southern District of New York
By: JAMES NICHOLAS BOEVING
      JEANNETE A. VARGAS
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Telephone: (212) 637-2748 (Boeving)
          (212) 637-3678 (Vargas)
Facsimile: (212) 637-2686

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM K. HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE and JOHN E. POTTER, POSTMASTER GENERAL,<br><br>Defendants. | No. 06 Civ. 13131 (GBD)<br><br>ECF Case<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS PUSUANT TO LOCAL CIVIL RULE 56.1** |

Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, defendants the United States Postal Service and John E. Potter,

the Postmaster General of the United States ("Defendants"), by and through their attorney Preet

Bharara, United States Attorney for the Southern District of New York, state that there is no

genuine issue to be tried with respect to the following material facts:

1.      Plaintiff William Harrison ("Plaintiff") was employed by is an African American

who was employed by the United States Postal Service ("USPS" or "Postal Service") from 1984

through 2001. *See* Declaration of James Nicholas Boeving ("Boeving Decl."), dated August 31,

2009, ¶ 2, Ex. A (Complaint (hereinafter "Compl.")), ¶ 17.

2.      Plaintiff was employed at all relevant times as a Supervisor of Distribution Operations ("SDO") at the Morgan Processing and Distribution Center ("Morgan"). *See* Boeving Decl., ¶ 3, Ex. B (Transcript of Deposition of William Harrison (hereinafter "Harrison Tr."), p. 20; Compl. ¶ 22.

3.      Plaintiff worked on Tour 2 (the day shift) at Morgan from the mid-1990s until he left USPS.  Harrison Tr., pp. 22-23.

4.      Plaintiff's title, pay, and benefits remained the same at all times relevant to the complaint, including when he was on detail.  Harrison Tr., pp. 122-23, 158.

5.      Plaintiff's wife filed a formal EEO Complaint on January 31, 1992, in which she alleged that her supervisor, Freddie Burroughs ("Burroughs") had sexually harassed her. Declaration of Darrel K. Ahmed (hereinafter "Ahmed Dec."), ¶ 3 and Ex. Q; Compl. ¶ 25; *see also* Harrison Tr., p. 32.

6.      Plaintiff testified at his wife's Equal Employment Opportunity Commission ("EEOC") hearing on November 2, 1995.  Harrison Tr., p. 70, 188-89; Boeving Decl. ¶ 5 and Ex. D (hereinafter "1995 Testimony").

7.      Plaintiff first contacted an Equal Opportunity Office ("EEO") Counselor regarding his complaints on October 27, 1997.  Harrison Tr., pp. 274-75; Boeving Decl. ¶ 6, Ex. E (hereinafter "1997 Precomplaint Counseling"); *see also* Harrison Tr., pp. 222, 224-28.

8.      Plaintiff filed his first formal EEO Complaint, EEO Case No. 1A-100-0022-98, on January 20, 1998.  Ahmed Decl. ¶ 4 and Ex. R (hereinafter "First EEO Compl."); Compl. ¶ 6.

9.      Plaintiff's second request to speak with an EEO Counselor was on October 22, 1999.  Harrison Tr., pp. 144-45; Boeving Decl. ¶ 4 and Ex. C (hereinafter "1999 Precomplaint Counseling").

10.     Plaintiff filed his second formal EEO Complaint, EEO Case No. 1A-102-0006-00, in January 2000.  Compl. ¶ 11.

11.     Plaintiff's third and final request to speak with an EEO Counselor occurred on July 27, 2000.  Ahmed Decl. ¶ 5 and Ex. S.

12.     None of the alleged discriminators involved in this complaint ever made any comments about Plaintiff's race.  Harrison Tr., pp. 51, 53-55, 176.

13.     Joseph Colon, Tyrone Stallings, and Robert Daruk never made any comments to Plaintiff concerning his protected EEO activity.  Harrison Tr., pp. 72, 93, 96, 264-66; Boeving Decl. ¶ 10, Ex. I (Transcript of Deposition of Joseph Colon (hereinafter "Colon Tr."), pp. 94-95.

14.     Aside from the 1991 General Supervisor Position and 1996 Human Resources Research Assistant position, Plaintiff cannot identify the year or vacancy number of any position to which he applied.  Harrison Tr., 229-35, 241-42; Boeving Decl. ¶ 17 and Ex. P (Plaintiff's Response to Defendants Third Set of Interrogatories and Request for Documents (hereinafter "Plaintiff's Interrogatory Responses"), at Response 1.

15.     Plaintiff cannot identify any year he applied for an MDO position, and Plaintiff admits that he did not apply for the MDO position that went to Mary Whitehead in early 2000. Harrison Tr., pp. 230-35; Plaintiff's Interrogatory Responses, at Response 1; Boeving Decl. ¶ 16 and Ex. O (MDO Promotion Report).

16.     Although Colon, Bowen, and Robert Ciaffaglione served on promotion boards, none ever saw an application from Plaintiff.  Colon Tr., 69, 71; Boeving Decl. ¶ 13 and Ex. L (Transcript of Deposition of Brenda Bowen (hereinafter "Bowen Tr."), pp. 90-91; Declaration of Robert Ciaffaglione (hereinafter "Ciaffaglione Decl."), ¶ 7; *see also* Ahmed Decl. ¶ 6 and Ex. T.

17.    Plaintiff's complaints concerning Colon's purported refusal to allow Plaintiff to serve as AMDO occurred in 1994, prior to Plaintiff engaging in any protected activity and before Colon had any knowledge that Plaintiff was going to engage in protected activity.  Harrison Tr., pp. 169, 172-73, 188-89; Colon Tr., pp. 56-57, 90-91.

18.    In 1997, Pauline Cousins, Plaintiff's supervisor, asked Colon if Plaintiff could serve as her AMDO, and Colon approved the request.  Boeving Decl. ¶ 11 and Ex. J (Transcript of Deposition of Pauline Cousins (hereinafter "Cousins Tr."), pp.64-65; Colon Tr., pp. 100-01.

19.    Plaintiff served as AMDO on other occasions as well.  Harrison Tr., p. 130, Cousins Tr., p. 66.

20.    Numerous African American SDOs were allowed to serve as AMDO.  Harrison Tr., p. 130; Colon Tr., pp. 57-58, 62-65, 73-77, 96-100, 108-109; Cousins Tr., pp. 30-32, 36-37, 40-42, 62-66; Bowen Tr., pp. 48, 50-52; Ciaffaglione Decl., ¶ 5; Declaration of Tyrone Stallings (hereinafter "Stallings Decl."), ¶¶ 6, 8-10.

21.    Pauline Cousins, Mary Whitehead, and Marcia Youngs, all African Americans, served as AMDO for Colon.  Colon Tr., 58, 136; Bowen Tr., p. 50; Stallings Decl. ¶ 8.

22.    Bernard Cross, James Bentley, Veronica Lewis, and Marcia Youngs, all African Americans, served as AMDO for Stallings.  Stallings Decl. ¶ 6; Bowen Tr., pp. 50-51.

23.    Rosetta Turner and Judy Pierre, both African American, served as AMDO for Cousins.  Cousins Tr., pp. 36-37, 40-42.

24.    James Bentley and Mary Whitehead, both African American, served as AMDO for Ciaffaglione.  Ciaffaglione Decl. ¶ 5; Bowen Tr., p.51; Stallings Decl. ¶ 9.

25.    Neither Colon, the Senior MDO, nor Cousins, Plaintiff's MDO in the Automation Unit, had the authority to or were responsible for Freddie Burroughs's reassignment since

Burroughs was on a different tour.  Colon Tr., pp. 115-16; Cousins Tr., p. 93; *see also* Harrison Tr., p. 97.

26.     Plaintiff had to work with Freddie Burroughs for only 3 to 5 minutes per day for approximately 3 months.  Harrison Tr., pp. 85-89; *see also* Bowen Tr., p. 29.

27.     During Plaintiff's interactions with Burroughs, Burroughs never mentioned Plaintiff's wife, made any offensive comments, raised his voice, or acted violently towards Plaintiff.  Harrison Tr., pp. 85-87.

28.     Only the Plant Manager, the Senior MDO, the MDOs and the AMDOs would attend plant manager meetings that were held at the end of each tour.  Harrison Tr., pp. 207-208, 211-12; Colon Tr., pp. 129-130, 132-34, Cousins Tr., pp. 104-105.  SDOs would attend only if they "had reason to be there."  Harrison Tr., p. 208; *see also* Colon Tr., 130, 134-35; Bowen Tr., pp. 58-59.

29.     Only the Senior MDO, the MDOs, and the AMDOs were allowed to park in the USPS parking garage during weekdays.  Bowen Tr., pp. 65-69; Colon Tr., 144-45; Cousins Tr., p. 109; Harrison Tr., pp. 103-07, 110; Boeving Decl. ¶ 14 and Ex. M (hereinafter "Bowen EEO Aff.).

30.     Robert Lopez would frequently give Colon a ride to work and use Colon's parking spot based on their friendship and because Lopez gave him a ride to work.  Harrison Tr., pp. 108, 114; Colon Tr., pp. 148-50.

31.     Colon never authorized any SDO who was not acting as MDO to park in the parking garage.  Colon Tr., 148-51; Harrison Tr., pp. 106-08.

32.     USPS management periodically reassigned SDOs so that they could gain experience in and familiarity with other units.  Colon Tr., pp. 35-36; Cousins Tr., p. 24; Bowen

Tr., pp. 35, 81-82, 170; Bowen EEO Aff.; Ciaffaglione Decl. ¶ 6; Stallings Decl. ¶ 5; *see also* Harrison Tr., p. 90.

33.     In November 1997, Senior MDO Brenda Bowen made the decision to transfer Plaintiff and Marcus Tieman, a Caucasian with no prior EEO activity, to the Transportation Unit, which was under the supervision of Tyrone Stallings.  Bowen Tr., p. 85; Harrison Tr., pp. 156-57; Colon Tr., p. 88.

34.     Bowen did not retaliate against Plaintiff, nor did her attitude towards him change after she eventually learned of Plaintiff's EEO complaints.  Harrison Tr., pp. 175-76.

35.     The Transportation Unit was considered by USPS management to be one of the most important operations.  Cousins Tr., pp. 99-100; *see also* Bowen Tr., p. 85; Colon Tr., p. 122.

36.     Numerous individuals who either served as AMDO or were selected as permanent MDO had experience in the Transportation Unit.  Harrison Tr., pp. 161-62; Colon Tr., pp.121-24; Cousins Tr., pp.100-03; Bowen Tr., pp. 85-87; *see also* Colon Tr., pp. 119-23; Boeving Decl. ¶ 7 and Ex. F (Transcript of Deposition of Robert Daruk (hereinafter "Daruk Tr."), pp. 72-73.

37.     In 1998 or 1999, when Plaintiff worked in the Transportation Unit, Plant Manager Robert Daruk allowed Plaintiff to give presentations on behalf of the Postal Service at a conference in Colorado and on a separate occasion to the Canadian Postal Service in Toronto, Canada.  Daruk Tr., pp. 118-119, 122, 130; Harrison Tr., 124-26; Bowen EEO Aff.; Boeving Decl. ¶ 9 and Ex. H (Transcript of Deposition Elizabeth Murray (hereinafter "Murray Tr."), pp. 56-57, 76, 89-90.

38.     In May 1999, Robert Daruk approved Plaintiff's four-month detail to the Quality Unit.  Harrison Tr., pp. 117-21; Daruk Tr., pp. 29-30, 36.

39.     Plaintiff was told at the outset of his Quality Unit detail that it would last only four months.  Harrison Tr., pp. 128-32, 145-46; Daruk Tr., pp. 29-30, 36.

40.     Many other SDOs wanted but did not receive detail assignments.  Harrison Tr., pp. 119, 124; *see also* Murray Tr., pp. 104-05.

41.     It was Daruk's intent to rotate SDOs through short details to the Quality Unit so that they could learn process management and then return to their normal assignment and implement what they had learned.  Daruk Tr., p. 35; Boeving Decl. ¶ 8 and Ex. G.

42.     Other SDOs also received details of short duration.  Declaration of Brenda Reid (hereinafter "Reid Decl."), ¶ 7.

43.     Daruk did not come to Morgan until 1998 and had no knowledge of Plaintiff's EEO complaints or testimony in his wife's EEOC case at the time Plaintiff was detailed to the Quality Unit.  Daruk Tr., pp. 7, 55-56.

44.     Elizabeth Stewart Murray and Larry Wick never had any conversations with Daruk about Plaintiff's protected activity.  Murray Tr., pp.52-53, 83, 90; Boeving Decl. ¶ 12 and Ex. K (Transcript of Deposition of Larry Wicks (hereinafter "Licks Tr."), pp. 54-59.

45.     Brenda Reid and Chuck Jung were assigned to the Quality Unit by a different Plant Manager and their work was distinct from Plaintiff's.  Wicks Tr., pp. 32-33, 35-38, 56; Murray Tr., p. 23-24, 123; Harrison Tr., pp. 133-35, 138-41; Reid Decl. ¶¶ 2-6; Declaration of Bruno Gentile (hereinafter "Gentile Decl."), ¶¶ 5-7.

46.     Bruno Gentile's detail to the Quality Unit was the same length as Plaintiff's, and, in any event, Mr. Gentile was employed in a completely different capacity as an engineer in the maintenance department.  Gentile Decl. ¶¶ 2-3.

47.     The Quality Unit disbanded in early 2000.  Murray Tr., p. 27; Reid Decl. ¶ 2.

48.    Overtime was given on an as-needed basis dictated by the volume of mail, and when Plaintiff was denied overtime it was because his services were not needed. Colon Tr., pp. 159-62; Harrison Tr., pp. 184-85.

49.    Plaintiff requested to work overtime no more than ten times between 1994 and 2000, and was allowed to work overtime on 2 or 3 occasions. Harrison Tr., pp. 182-84; *see also* Colon Tr., pp. 148-51, 163.

50.    Plaintiff cannot provide the specific date he requested but was denied overtime or the supervisors who allegedly denied his request. Harrison Tr., pp. 183-84.

51.    Plaintiff cannot identify a single instance when he was denied an overtime request but an SDO of a different race or with no prior EEO activity was allowed to work overtime. Harrison Tr., p. 186.

52.    Plaintiff was issued a letter of warning on October 18, 2000 – more than 2 months after his last EEO contact – for failing to properly investigate why three containers of mail missed a scheduled trip. Stallings Decl. ¶ 11 and Ex. U; Harrison Tr., pp. 249-53

53.    Plaintiff did not interview the supervisor of the other station, and does not recall interviewing the mail truck driver. Harrison Tr., p. 259.

54.    Stallings had issued similar letters of warning to other SDOs who had not engaged in protected activity. Stallings Decl. ¶ 12 and Ex. V.

55.    Plaintiff has no personal knowledge that William Carrero was ever paid for a full day when he did not work the entire day. Harrison Tr., p. 177-80.

56.    Plaintiff never told a supervisor that on one occasion he saw Carrero sign in for a full day, leave early, and get paid for a full day, and Colon and Bowen deny that such a practice

was ever authorized.  Harrison Tr., p. 177-78; Colon Tr., pp. 178-80; Bowen Tr., 63-64; Bowen EEO Aff.

57.     Colon's comments that Plaintiff could be removed if he did not comply with Colon's instructions had to do with Colon's desire for Plaintiff to "get[] more work out of employees [and] things of that nature."  Harrison Tr., p. 199; *see also* Harrison Tr., p. 201.

58.     Colon never shouted or made physical gestures towards Plaintiff during these purported conversations.  Harrison Tr., p. 205.

59.     Louise Whitehead, who left Morgan in 1994, never retaliated against Plaintiff. Harrison Tr., p. 99; Colon Tr., pp. 56-57.


Date:   August 31, 2009
        New York, New York

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney
                                Southern District of New York

                        By:     _____
                                JAMES NICHOLAS BOEVING
                                JEANNETTE A. VARGAS
                                Assistant United States Attorneys
                                86 Chambers Street
                                New York, New York 10007
                                Tel.: (212) 637-2748
                                Fax: (212) 637-2686